952 P.2d 1262

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Wenkai LI, Defendant–Appellant.**

**No. 23241.**

Court of Appeals of Idaho.

March 6, 1998.

Mahaffy Thie Chartered PLLC, Moscow, for defendant-appellant.

Alan G. Lance, Attorney General, Kevin J. Wladyka, Deputy Attorney General, Boise, for plaintiff-respondent.

SCHWARTZMAN, Judge.

Wenkai Li pled guilty to two counts of second degree murder. The court imposed a unified life sentence with twenty-five years fixed for the murder of Ning Li and a unified life sentence with forty years fixed for the murder of Xia Ge. The sentences are to run consecutively. Li appeals, asserting that the sentences are excessive and that the district court made several errors in the sentencing process. We affirm.

## I.

### FACTS AND PROCEDURE

In 1995, Wenkai Li was a twenty-five-year-old graduate student studying metallurgical engineering at the University of Idaho. Ning Li[1] and his wife, Xia Ge were also graduate students at the University, and they had a child, LeLe, who was about five to six years old and residing in China with Ning Li's sister at the time of her parents' killings.

Between May 20 and May 27, 1995, Wenkai Li purchased several knives, including a "buck knife" and two sleeping bags from Walmart. On May 22, 1995, Li also purchased latex gloves, lawn bags and packing tape. On May 29, 1995, Li went to Ning Li's apartment in Moscow for the alleged purpose of asking some questions regarding courses of study. Even though it was eighty-five degrees, Li had worn his heavy coat with the buck knife in the pocket.

After conversing for twenty or thirty minutes about computer science, Li alleges that Ning Li made disparaging comments about the virtue of Wenkai Li's girlfriend, Xiaohui Pan. Li says these comments made him very angry, and when he threatened to tell Ning Li's wife about an affair Ning Li had with another woman, Ning Li slapped him. At this point, Wenkai Li says that his "head exploded" and he pulled the knife out of his coat and began to repeatedly stab Ning Li.

Li stated that after he killed Ning Li, Xia Ge walked into the room and took the knife from him. Li took the knife back and then began to choke Xia Ge with a wire. However, she continued to struggle, so Li stabbed her until she was dead.

Both Ning Li and Xia Ge died as a result of severed cervical spinal cords; the autopsy report showed that Ning Li "sustained 25 stab/incised wounds ... including other defense type, incised wounds to his right hand and other abrasions and bruises over his body," and that Xia Ge was stabbed approximately ten times.

Li left the apartment and returned later that day and took Ning Li's wallet, credit cards, the couple's personal property, and bank records. The next morning Li unsuccessfully attempted to obtain approximately $6,500 from the couple's bank account. Li also decided to make it look as if Ning Li and Xia Ge had moved, so he cleaned up the apartment, disposing of any possibly incriminating evidence. He put the bodies into sleeping bags and then stuffed them into Ning Li's car.

Li left Moscow, using the couple's credit cards as he drove in and out of Idaho. Over the next six days the bodies began to decompose, causing the car and Wenkai Li to smell "very bad, like rotten eggs." Eventually Li left the bodies by the side of the road in Rawlins, Wyoming, sold the car, and bought

---

1. Ning Li is not related to Wenkai Li.

a bus ticket to Salt Lake City, Utah. The bodies were soon discovered, and shortly thereafter Li was apprehended, based partly upon his use of Ning Li's credit cards.

Li was charged with two counts of first degree murder. After jury selection, Li pled guilty to two counts of second degree murder, enhanced for use of a deadly weapon. A presentence investigation, including a psychological examination, was prepared, and after a two-day sentencing hearing, the district court imposed a unified life sentence with twenty-five years fixed for the murder of Ning Li, and a consecutive life sentence with forty years fixed for the murder of Xia Ge.

Li timely appealed.

## II.

### ANALYSIS

#### A.. Abuse of Discretion

 Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

> "[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.
>
> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view

of the facts, his sentence was excessive in light of the foregoing criteria."

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405, *quoting State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

 Since Li asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

> the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

The district court ordered that Li's sentences would be served consecutively. As a result, Li will serve a minimum of sixty-five years in confinement unless his sentences are modified or restructured through commutation. Thus, Li will be at least ninety-one years old before he is statutorily eligible for parole.[2]

In examining the nature of Li's offense, we are struck by the appalling nature of these murders, and especially by Li's conduct with the bodies after his wanton killing of these innocent victims. Militating in Li's favor is the fact that Li has virtually no prior criminal record in this country, as well as a positive evaluation from the court-appointed psychologist. However, these factors pale in the face of the gruesome murders of Li's fellow students, which also rendered their child an orphan.

After conducting an extensive evidentiary sentencing hearing, the district court then

___

**2.** In effect, Li has received a fixed life sentence, and we will treat it as such.

gave a lengthy but reasoned sentencing summation involving all aspects of the case, summarized in part as follows:

Up until your final statement to this Court, this record revealed a total absence of remorse for your acts. . . .

. . . .

All those factors, the brutality, the grizzliness of the crime, the inconsistencies in the statements, the lack of credible statements in some instances, the apparent profit from those crimes, that indicia of some planning, but not really enough, require this Court to be somewhat less than lenient in your case as requested by your attorney.

. . . .

These crimes—these sentences, based upon again, the brutality of those crimes, this Court will order that those sentence be served, sir, consecutively. . . .

This is tragic. You were and still are, in fact, one of the best and the brightest. Something went wrong. And it wasn't a small thing that went wrong. You killed two people. It wasn't an accident. It wasn't a mistake. You intended to kill two people. You aggravated that condition by driving around with the bodies of those two young people in the car for six days. . . .

Given sixty-five years of actual incarceration, Li will effectively spend the rest of his life in prison. In *State v. Eubank,* 114 Idaho 635, 759 P.2d 926 (Ct.App.1988), we stated: "[A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society." 114 Idaho at 638, 759 P.2d at 929.

■ Here, the offenses committed by Wenkai Li were hideous and gruesome beyond belief, rising, in our opinion, to that heightened level of egregiousness necessary before a fixed life sentence, or its equivalent, will pass judicial scrutiny on appellate review. The sentencing court had every right to emphasize the brutality and grizzliness of the crimes, together with Li's planning and profit motives, credibility gap and apparent lack of deep remorse, in fashioning these sentences. Accordingly, we hold that the district court did not abuse its discretion in sentencing Li to consecutively running sentences of life with twenty-five years fixed for the murder of Ning Li and life with forty years fixed for the murder of Xia Ge.

## B. Alleged Sentencing Errors

Li also alleges that the district court made several errors during the sentencing process: (1) that the court considered improper requests for punishment that were contained in the victim impact statement, (2) that the court improperly ignored the presentence report, and (3) that the court improperly ignored the psychological evaluation.

■ We note that consideration of the second two issues was necessary for a proper evaluation of the reasonableness of the sentence imposed. However, Li has not provided sufficient argument or citation to compel us to separately review any of the three issues. Claims not supported by cogent argument or citations of authority will not be reviewed on appeal, *State v. Phillips,* 118 Idaho 27, 29, 794 P.2d 297 (Ct.App.1990), and Li has waived these issues since either authority, argument or both are lacking on each issue. *See, State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

## III.

## CONCLUSION

The judgments of conviction and sentences imposed upon Li for second degree murder are affirmed.

LANSING, C.J., and PERRY, J., concur.